Mr. Justice CLIFFORD
delivered the opinion of the court.
.Controversy in this ease grew out of a contract for the purchase, sale, and delivery of one thousand barrels of flour, and the parties concur that the flour was never delivered by the original defendants. Special count, as amended, alleged, in substance and effect, that the defendant's, on the fifth day of February, 1863, at Milwaukee, in the State of Wisconsin, in consideration of five thousand five hundred dollars, sold to the plaintiffs one thousand barrel^ of flour, stored at Neenah, in that State, and agreed to deliver the same, when requested, free of charge, to the plaintiffs, on board of a steamer to be by them procured or furnished at the place where it was stored, after navigation should open, and a reasonable time before the thirty-first day of May following, to be conveyed to the plaintiffs, at Boston, in the ordinary manner of transportation. They also alleged demand and refusal .to deliver the flour as agreed, and claimed damages for the non-fulfilment of the contract. Declaration also contained the common counts as set forth in the record.
Plea was the general issue, and the verdict and judgment were for the plaintiffs,-and the defendants excepted and sued out this writ of error.. Exceptions were taken by the defendants to certain rulings of the court during the trial, and to certain instructions of the court as given to the jury after *697 the testimony was closed, which will he considered in the order they are exhibited in the record.
I. Plaintiffs produced and offered to read in evidence, to prove the issue on their part, a certain letter, dated Milwaukee, February 5, 1863, and written by the defendants to the plaintiffs, and a bill of sale of the flour, executed at the same time and place, and signed by the defendants, and which was inclosed in the letter of the defendants so offered in evidence. Material parts of the letter were as follows: “Tour Mr. W. left here yesterday, and before going off we sold him 1000 barrels round hoop flour, Empire Mills, Iowa, free, on board steamer at Neenah, for ,$5.50, for which And bill inclosed. We have the flour stored and insured, . . . and will value on you at sight for the amount.” Inclosed in that letter was the following bill of sale, which was also signed by the defendants: -
“Messrs. Towne & Washburne,
Bought of Nash & Chapin, general commission merchants, 1000 barrels of flour, Empire Mills, Iowa, round hoop, 5£, $5500.
Beceived payment, sight draft,
(Signed) Nash & Chapin.”
Such being all the evidence offered by the plaintiffs, under the special count, the defendants objected that the evidence was not admissible in the case, because it tended to prove a different contract from that set out in the declaration, but the court overruled the objection, and the letter and-bill of sale were read in evidence to the j ury.
Defendants excepted to the ruling of the court, and that exception raises the first question presented for decision in the record. Obviously, the exception involves the construction of the special count, and .of the contract exhibited in the letter and bill of .sale offered in evidence.
Argument of the defendants is that the contract offered in evidence varied from the allegations of the special count in two particulars:
1. That it differed from the declaration as to the time when the floui was to be delivered.
*698 2. That it also differed from the declaration as to the shipment of the flour, and because it contained no agreement to furnish a steamer.
Undoubtedly, the rule is that the proofs must correspond with the allegations in the declaration, but the requirement in that behalf is fulfilled, if the substance, of the declaration is proved.
1. Allegations of fact in the pleadings, affirmed on one side and denied on the other, must in general be tried by a jury, and the purpose of the rule which requires that the allegations and the proofs must correspond, is that the opposite party may be fairly apprised of the specific nature of the questions involved in the issue. Formerly, the rule in that respect was applied with great strictness, but the modern decisions are more liberal and reasonable. Decided cases may be found, unquestionably, where it has been held that very slight differences were sufficient to constitute a fatal variance. Just demands were often defeated by such rulings until the Parliament interfered,, in the parent country, to prevent such flagrant injustice.*
Federal courts have possessed the power, from their organization to the present time, to amend such imperfections in the pleadings, except in case.s of special demurrer set down for hearing, and are directed to give judgment according to law and the right of the cause.†
•Recent statutes in the States also confer a liberal discretion upon courts in allowing amendments to pleadings, and those statutes, together with the change they have superinduced. in the course of judicial decision, may be said to have established the general rule in the State tribunals that no variance between the allegations of a pleading and the proofs offered to sustain it, shall be deemed material, unless it be of a character to mislead the opposite party in maintaining his action or defence on the merits.‡
*699 Irrespective, of those statutes, however, no variance ought ever to be regarded as material where the allegation and proof substantially correspond. Contract in this case was executed in midwinter, when the navigation was closed, and both parties knew that the flour could not be transported until the navigation opened in the spring. “ Free on board the steamer at Neenah ” meant that the defendants should deliver the flour on board the steamer without charge to the plaintiffs. Time of delivery is not specified, but it was to be on board a steamer at Neenah, and it would be unreasonable to suppose that the parties contemplated that it should be withdrawn' from the warehouse where it was stored in safety and insured and deposited in a steamer, even if one was there, before the navigation opened in the spring.
Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the .contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed, them, and so to judge of the meaning of the words and of the correct application of the language to the things described.*
Applying those rules to the case, it is quite clear that the parties did not contemplate that the flour should be withdrawn from the warehouse, where it was safely stored and insured, until the navigation opened in the spring, because the withdrawal of the same before that time would have been worse than useless, as it could not-be earlier transported to-the place of destination, and if withdrawn and delivered it would involve unnecessary expense and the necessity of re-warehousing it and procuring a new insurance. Plain inference, therefore, is that it was to remain in the storehouse where it was until the navigation opened in the spring) *700 but that it was to be withdrawn and delivered on board a steamer at that place, free of charge to the plaintiffs, before the spring season of navigation closed.
Such being the true construction of the contract as to the time the delivery of the flour was to be made, it is evident that the objection that there is a variance in that respect between the prdofs offered in evidence and. the special count cannot b.e sustained. Averment of demand and refusal in the count is not unusual in such eases, and, even if not 'Strictly necessary, it certainly can afford no ground to support the present exception.
'2. Second objection taken at the argument is that the contract, as proved, does not support the allegation that the defendants agreed to procure or furnish a steamer at the place of delivery, or to ship the flour on board a steamer free of charge to the plaintiffs, as alleged in the special count.
. Express words of the contract are, “ free on board steamer at Neenah,” and the terms of the contract also show that the flour, at the date of the contract, was safely stored in a warehouse at the place where it was to be delivered. Those words necessarily imply that the flour was in the possession and Under the control-of the defendants, and.that the delivery was- to be made in the future. Terms of the contract also imply as clearly that the placé of.delivery was on board a steamer at that port as they do that the delivery was to be made by the defendants. Freight was to be paid by the plaintiffs, but the delivery on board the steamer was to be made by the defendants, and it follows, in the absence of any stipulation to the contrary, that the defendants were to procure or select the steamer to transport the flour down the bay, and to the place of transshipment, over the usual route. Our conclusion is, that the allegations of the special count, and the proofs given in evidence, were substantially the same, or, in other words, that the differences between them, if any, were not of a character which could have misled the defendants at the trial, and therefore the objection must be overruled.
*701 II. Evidence was also introduced by the plaintiffs showing that the defendants drew on them for the whole amount of the purchase-money, in a sight draft, and that they paid the draft, as given in evidence, when' it was.presented.
Exceptions were taken by the defendants to the rulings of the court in admitting that evidence, but the rulings of the court were so clearly correct that it seems unnecessary to remark further upon the subject.
III. Plaintiffs also proved that the flo.ur, at the date of the contract, was stored in a railroad warehouse at Neenah, and that the defendants had admitted that it had been sold and delivered to a third person prior to the commencement of the suit. They went further, and proved demand and refusal, and showed that the defendants, at the date of the contract, had but'one thousaud barrels of flour stored in that warehouse, and that the whole of that parcel was sold and delivered prior to the suit, with the defendants’ knowledge and consent.
Witnesses were examined on the subject, and in the course of their examination two other exceptions were taken by the defendants to the rulings of the court in admitting testimony. Substance of the testimony objected to and introduced was that the flour was withdrawn from the warehouse where it was stored, at the date of the contract, under the orders of the defendants, and deposited in another place, and finally delivered to other parties, in part fulfilment of a much larger contract. Testimony previously introduced showed that the plaintiffs accepted the sight draft, and paid the same for the purchase-money, and that the defendants refused to deliver the flour; and the evidence objected to was doubtless offered to show that they had converted thé flour to their own use, and, in our judgment, it was properly admitted for that purpose. Where the seller of goods received the purchase-money at the agreed price, and subsequently refused to deliver the goods, and it appeared at the trial that •he had converted the same to his own use, it was held at a very early period that an action for money had and received would lie to recover back-the money, and it has never been *702 heard in a court of justice since that decision that there was any doubt of its correctness.*
Assumpsit for money had and received is an equitable action to recover back money which the defendant injustice ought not to retain, and it may be said that it lies in most, if not all, cases where the defendant has moneys of the plaintiff which, ex equo et bono, he ought to refund. Counts for money had and received may be joined with special counts; and where, as in this case, the special counts are for damages for the non-delivery of goods, it is perfectly competent for the plaintiff, if the price was paid in money or money’s worth, to prove the allegations of the special counts and introduce evidence to support the common Counts; and if it appears that the defendant refused to deliver the goods, and that he has converted the same to his own use, the plaintiff, at his election, may have damages for the non-delivery of the goods, or he may have judgment for the price paid and lawful interest. Evidence in this case was clear, not only that the plaintiffs paid the price in money, but that the defendants refused to deliver the flour, and converted the same to their own use, by selling and delivering it to other persons. †
Such a reception of the price, refusal to deliver, and conversion of the goods constitute plenary evidence of an implied promise to refund the price paid, and an action for money had and received is an appropriate remedy for the plaintiffs.
Principal defence was that the flour belonged to one Samuel Gr. Burdick, and that the defendants, in negotiating the sale, acted merely as the agents of the owner of the flour, and that they, during the negotiation for the sale, informed the plaintiffs of their agency, and gave to them the name of their principal as the owner of the flour. They also claimed that the plaintiffs agreed at the sale of the flour to take the warehouse receipts of their principal for the flour, *703 and that the defendants merely held those receipts at the request of the plaintiffs, and for their benefit, and were therefore under no obligations to deliver the flour.
Such was the theory of the defendants, but there wa.- no proof of any such agreement, except that one of the plainti/'j testified that the defendants, when the demand was made for the delivery of the flour, claimed that such was the un-. der.standing of the parties at the date of the contract. Defendants introduced no testimony, but offered to prove that in negotiating the sale they acted as agents, and that they so informed the plaintiffs, and gave them the name of their priheipal. Plaintiffs objected to the testimony, and it was excluded by the court, and the defendants excepted. They still, insist .that the ruling of the court in that behalf was erroneous, but they admit the general rule that parol evidence is not admissible to. supply, contradict, enlarge, or vary the words of a written contract; and it is. equally well settled that when a contract is reduced to writing all matters of negotiation and discussion on the subject antecedent to and dehors the writing are excluded as being merged in the instrument.*
Parol evidence can n.ever be admitted for the purpose of exonerating an agent who has entered into a written contract in which he appears as principal, even though he should propose to show, if allowed, that he disclosed his agency and mentioned the name of his principal at the time the contract was executed.†
Where a simple contract, other than a bill or note, is made by an agent, the principal whom he represents may in general maintain an action upon it in his own name, and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was an agent, and that he was acting for his principal. Such evidence, says'Baron Parke, does not deny that the contract binds those whom on its face it purports to bind, but shows *704 that it also binds another, and that principle has been fully adopted by this court.*
Cases may be found, also, where it is held that the plaintiff may prove by par.cil that the other contracting party named in the contract was but the agent of an undisclosed principal, and in that state-of the case he may have his remedy against either, at his election.†
Evidence to that effect will be admitted to charge the principal or to enable him to sue in his own name, but the agent who binds himself is never allowed to contradict the writing by proving- that he contracted only as -agent, and not as principal.‡
Exceptions were also taken to the charge of the court, but they involve, for the most part, the same questions as are presented in the objections taken to the admissibility of the evidence, and therefore do not require to be further answered. Slight as the evidence was to show that the plaintiffs accepted the warehouse receipts in lieu of the flour, still the court left that question to the jury, and their finding upon the subject is conclusive. Complaint is also made that the rule of damages given to the jury was not correct, but the complaint is so clearly without merit that we forbear any further comments upon the subject.
Judgment affirmed, with costs.

 1 Taylor on Evidence, § 173, p. 187.

 1 Stat. at Large 91.

 3 Phillips on Evidence, 4th Am. ed. 148; Harmony v. Bingham, 1 Duer, 210; Catlin v. Gunter, Kernan, 368.

 Barreda et al. v. Silsbee, 21 Howard, 161; Shore v. Wilson, 9 Clark & Finnelly, 569; Addison on Contracts, 846.

 Anonymous, 1 Strange, 407; 2 Greenleaf on Evidence, 124.

 Allen v. Ford, 19 Pickering, 217; Jones v. Hoar, 5 Id. 285.

 2 Kent’s Com., 11th ed. 746; 1 Greenleaf on Evidence, 12th ed., § 275, p. 312.

 Higgins v. Senior, 8 Meeson & Welsby, 844.

 New Jersey Steam Nav. Co. v. Merchants’ Bank, 6 Howard, 381; Ford v. Williams, 21 Id. 289; Oelricks et al. v. Ford, 23 Id. 63.

 Thomson v. Davenport, 9 Barnewall & Cresswell, 78.

 Jones v. Littledale, 6 Adolphus & Ellis, 486; 1 Parsons on Contracts, 5th ed. 64; Titus v. Kyle, 10 Ohio N. S. 444; 2 Smith’s Leading Cases, 6th Am. ed. 421.