# Wytheville.

## R. & D. R. R. Co. v. George.

### July 9th, 1891.

### Absent, *Fauntleroy*, J.

1. NEGLIGENT INJURIES—*Employees—Machinery.*—It is no longer an open question that employer is bound to use ordinary care in supplying and and maintaining adequately safe instrumentalities for the performance of the work required, and if he fail to do so, he is as liable to an employee as to a stranger.

2. IDEM—*Case at bar.*—Plaintiff, a brakeman in defendant company's employ, attempted to get down from a car on front end of train, to uncouple engine. The bottom rung of the car-ladder was missing, and while feeling for it in the dark with his foot, the engineer, without awaiting the usual signal, suddenly backed the engine against plaintiff and injured him. The bumper on end of car was broken off so that the tender came close to it. Plaintiff was not aware the bumper was broken. The train was made up under the supervision of the regular car inspector:

HELD:

The defective condition of the car was the proximate cause of the injury, and the defendant was liable.

3. IDEM—*Fellow-servants.*—The doctrine of fellow-servants has no application to the above case.

4. APPELLATE PRACTICE—*Excessive damages—New trial—Rule.*—If no objection appear by bill of exceptions taken to the overruling of a motion for a new trial, to have been made in the trial court, to excessiveness of damages, it is too late to make such objection here.

Error to judgment of circuit court of Franklin county, rendered October 22d, 1890, in an action of trespass on the case

for negligent injury, wherein David C. George was plaintiff and the Richmond and Danville Railroad Company was defendant. The jury, by their verdict, gave the plaintiff $8,500 damages. And the defendant brought the case here upon writ of error. Opinion states the case.

*C. M. Blackford*, for plaintiff in error.

*Green & Miller*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

The real merits of the case in this court lie within a narrow compass. The action was for personal injuries received by the plaintiff while in the employ of the defendant company as a brakeman. The charge in the declaration was that the injuries were caused by the negligence of the defendant, in failing to provide suitable and safe cars and other appliances for the performance of the work required of the plaintiff in the course of the employment. The jury found accordingly, and judgment having been entered in conformity with the verdict, the defendant obtained a writ of error.

The accident occurred between 10 and 11 o'clock, in the night, on the 12th of March, 1889. At that time the plaintiff was employed as front brakeman on " a mixed train," running between Elba Junction and Rocky Mount, a distance of about thirty-five miles. When the train arrived at Rocky Mount, the plaintiff was riding on top of the front car, which was a box-car. It was his duty to descend from the train, upon its arrival at that point, and with his lantern to signal the engineer to " give slack," by which is meant to slightly reverse the engine, in order to " slack the coupling," that the pin may be " lifted," and the front car uncoupled from the tender. The engine is then put away for the night in a house provided for the purpose.

The plaintiff testified that in descending the ladder of the car next to the engine, to signal the engineer, he for the first time discovered that the bottom rung of the ladder was missing. "And in reaching down with my left leg," he says, "trying to find the missing rung, which had been broken off, I brought my right thigh in a horizontal position, when the engineer suddenly, without a signal, backed the engine." The result was that the plaintiff was caught between the tender and the car, and very seriously and permanently crippled.

It was customary for the engineer, and the rules of the company required him, to wait for the signal before backing.

An examination of the car, immediately after the accident, disclosed the fact that not only was the front ladder defective, but that the car was otherwise unsafe, in that it was provided with a defective and inadequate bumper on the end next to the engine.

"The bumper on a car," says one of the defendant's witnesses, "is simply to give brakemen a chance to couple or uncouple," by which was meant to enable the brakemen to go between the cars to couple or uncouple them with safety. Speaking of the car in question the plaintiff testified:

"This car had no platform, and I do not think it had a good bumper. If it had had a bumper like the others, I would not have got mashed, because the distance between the tender and the car would then have been longer than my thigh, and I could not have been hurt."

One of the defendant's witnesses, the engineer of the train, testified that there would still be room enough to couple or uncouple with two or three inches off the bumper, but that if the whole bumper was off, it would be different.

A witness for the plaintiff, however, who was present when the accident occurred, and whose evidence is uncontradicted, says he noticed a piece of the bumper was off, and that when he saw it, he remarked it was a wonder the plaintiff had not been killed. "It looked to me," he says, "as if there were

five or six inches of the bumper broken off. It looked shivered—not square off."

The plaintiff also testified that Orange, one of the brakemen on the train, told him, shortly after the accident, that he examined the car the next day, and that about four inches of the bumper was missing. This Orange, as a witness for the defendant, denied; but in the course of his examination he admitted that he could not tell how much was missing.

There is other evidence to the same effect. But, without stopping to review it, it is enough to say that viewing the case, as we must, in the light of the familiar rule of a demurrer to evidence—the evidence, not the facts, being certified—it is established that not only was the car defective, but that but for those defects the misfortune could not have happened.

Contributory negligence on the part of the plaintiff is not shown. Indeed, it is hardly contended for. His uncontradicted testimony is that he did not see, and was not apprised of, the dangerous condition of the car before he started, in the dark, to descend the ladder to signal the engineer, and under the circumstances of the case he had a right to assume that the car was safe. It is not disputed that an employee must be reasonably observant of the machinery he operates, but in the present case there is nothing to show that reasonable diligence on the part of the plaintiff would have sooner discovered the danger of the situation. The train, which consisted of several freight cars and a caboose or passenger car, was made up in the afternoon at the Junction, and while the plaintiff was stationed as a flagman, about a quarter of a mile away, on the main track of the Midland road. Nor was he "called in" from that position until the train was ready to start.

"I had nothing to do," he testified, "with making up the train. I did not know, when we started from the Junction, the condition of the car. I took it to be a sound car. Before reaching Rocky Mount I had no occasion to descend the ladder.

The car was loaded for Rocky Mount; it had no local freight at all. The rear freight car, next to the caboose, had the local freight, and if I was on the front car when a station was reached I went back over the cars to the one we had to unload, and then got on the caboose and got back over the train. I did not notice the bumper on the car. I was not so I could throw the light from my lantern on it. I did not know the condition of the ladder or the bumper before I was hurt."

It is true the engineer of the train testified that the plaintiff "passed the engine several times that night." But this the plaintiff denied. He said: "I did not go by the engine after we left the Junction. I looked at the car all I could. It was a very dark night." And it is needless to say that so much of the defendant's evidence as is in conflict with this statement must, according to the rule above-mentioned, be considered as waived.

It appears, moreover, that the train was made up under the supervision of a regular car-inspector. Yet the inspector was not examined as a witness, and no explanation of the failure to examine him was offered; nor was any witness called by the defendant who testified positively as to the condition of the car before the accident happened. The conductor of the train, although he testified in chief, that if there was any defect it happened after leaving the Junction, admitted on cross-examination, that he had no recollection of "this particular car," and that he made no special examination of any of the cars before leaving the Junction.

In this state of the evidence the plaintiff's right to recover is clear. The doctrine of fellow-servants has no application to the case. It is immaterial, therefore, whether the engineer, in backing the engine without a signal, was negligent or not. Nor is it necessary to inquire whether, upon the facts of the case, the engineer and the plaintiff were fellow-servants; for, be that as it may, the defective condition of the car was the

proximate cause of the injury complained of, and for that the company is responsible. It was undoubtedly negligence on the part of the agents of the company, who were charged with the duty of inspecting the car, to send it out in that condition, and their negligence was the company's negligence. *Northern Pacific R. R. Co.* v. *Herbert*, 116 U. S. 642. It is the universally recognized duty as well of a railroad company as of any other employer to provide suitable appliances for the conduct of its business, and to keep them in repair, and if in consequence of its failure to do so, a servant in its employ is injured without fault on his part, it cannot successfully defend on the ground of the negligence of a fellow-servant. The company's duty of supervision and inspection, it has been held is affirmative, and must be continuously fulfilled and positively performed. *Goodman* v. *R. & D. R. R. Co.*, 81 Va. 576. The servant, moreover, although he assumes the ordinary risks of the business including the negligence of fellow-servants, *does not contract against the combined negligence of a fellow-servant and of his employer.*

" To say," said the court in *Cayzer* v. *Taylor*, 10 Gray, 274, " that the master should not be responsible [to his servants] for an injury which would not have happened had a safeguard required by law been used, because the engineer was negligent, would be to say, in substance and effect, that he should not be liable at all for an injury resulting from the failure to use it." S. C., 69 Am. Dec. 317.

In the analogous case of *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700, the court, in approving an instruction given by the trial court, used this language: " We find no error in the instruction. It was, in effect, that if the negligence of the defendant company contributed to, that is to say, had a share in producing the injury, the company was liable, even though the negligence of a fellow-servant of the plaintiff was contributory also. If the negligence of the company contributed to, it must necessarily have been an immediate cause of, the accident,

and it is no defence that another was likewise guilty of wrong."

Contributory negligence to defeat a right of action in such a case must be negligence of the party injured. *Paulmier* v. *Railroad Co.*, 34 N. J. L. 151.

The doctrine that the master is bound to use ordinary care in supplying and maintaining adequately safe instrumentalities for the performance of the work required, and that if he fails in the performance of this duty, he is as liable to the servant as he would be to a stranger, has been so often asserted by courts of the highest character as to be no longer an open question—certainly not in this court. As was said in *R. & D. R. R. Co.* v. *Norment*, 84 Va. 167: "It is a cruel and inhuman doctrine that the employer, though he is aware that his own neglect to furnish the proper safeguards for the lives and limbs of those in his employment, puts them in constant hazard of injury, is not to be held accountable to those employees who, serving him under such circumstances, are injured by his negligent acts and omissions." And to the same effect are *Moon's Adm'r* v. *R. & A. R. R. Co.*, 78 Va. 745; *R. & D. R. R. Co.* v. *Moore's Adm'r, Id.* 93; *R. & D. R. R. Co.* v. *Williams*, 86 *Id.* 165; *Goodman* v. *R. & D. R. R. Co., supra*; *B. & O. R. R. Co.* v. *McKenzie*, 81 Va. 71, and other cases.

This sufficiently disposes of the case, except the point made in the brief of appellant's counsel, that the damages awarded are excessive. As to this, it is enough to say that the objection, made as it is for the first time in this court, comes too late. The bill of exception states that a motion for a new trial was made, but the motion was in general terms. It was not put upon the ground, specifically, that the damages were excessive. The established rule in this state is that if no objection appear by the bill of exceptions, taken to the overruling of a motion for a new trial, to have been made in the trial court to the excessiveness of damages, such objection cannot afterwards be made in the appellate court. And the

reason is that upon a motion to grant a new trial for this cause, the court may impose upon the successful party the alternative of remitting such portion of the damages as justice may require, or submitting to a new trial.   4 Min. Insts. 757, 872; *Law* v. *Law*, 2 Gratt. 366.

JUDGMENT AFFIRMED.