## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

NORFOLK & WESTERN RAILROAD CO. V. THOMAS' ADM'R.

JULY 20th, 1893.

1. RAILROAD COMPANY—*Negligent killing—Alter ego.*—An engineer, with the knowledge and permission of the conductor, who was the representative of the company, left his engine to be operated by an inexperienced fireman. Whilst making a flying switch, by the improper management of the engine by that fireman the brakeman was killed.
HELD:
    The company was liable.
2. DECLARATION—*Sufficiency.*—Where declaration details the facts of such killing, and alleges that at the time thereof the engine was under the management of such fireman, it is sufficient, and notifies the company that it will have to defend for failure to keep a competent engineer.

Error to judgment of circuit court of Pulaski county in an action of trespass on the case for the negligent killing of J. C. Thomas, deceased, wherein said Thomas' administrator was plaintiff and the Norfolk and Western railroad company was defendant. Opinion states the case.

*Phlegar & Johnson*, and *J. E. Moore*, for plaintiff in error.

*Wysor & Martin*, and *White & Buchanan*, for defendant in error.

HINTON, J., delivered the opinion of the court.

At the trial the jury found a verdict for the plaintiff for $4,000, subject to the demurrer to the evidence, and the court entered judgment thereon.

Now, by thus demurring, the defendant company, according to the settled rule, waived all evidence on his part in conflict with that of the demurrer, admitted the credit of the evidence demurred to, and all inferences of fact fairly deducible therefrom, and referred it to the court to deduce the fair inferences from the evidence. *Hansbrough's Ex'ors* v. *Thom*, 3 Leigh 147; *Trout* v. *The Va. & Tenn. R. R. Co.*, 23 Gratt., 630. Applying this rule, the case appears to be as follows:

Thomas, who had only been in the employment of the railroad for five or six days as a yard brakesman, was one of a crew, consisting of the conductor, engineer, fireman, and three brakesmen, whose business it was to shift cars and make up trains on said yard.

In this yard there are two tracks—one called the lead track, from which a switch track, known as Switch No. 2, led off in a southeasterly direction, and another on the north side of the lead track called the main track. And between the lead track and the main track there was a cut off, which on the lead track pointed east.

At the time of the accident, all but one of the six or seven cars had been put on Switch No. 2, and that one the company, through its conductor, who was present in person, ordered to be put on the lead track, *west* of the cut off, and the engine to go on the main track.

This the conductor ordered to be done by a flying or running shift. Such shifts are more dangerous than shifts with chain and push-pole, and are made in the following manner: The engine is coupled to the car and both are put in motion; when the momentum is sufficient to carry the car beyond the switch, the speed of the engine, in obedience to a signal from the man who is on the car, slackens, so that the coupling-pin can be withdrawn. The pin is then withdrawn, the engine is

signalled to go ahead, and its speed is gradually increased until it runs ahead of the car, passes the switch on one track, when the switch is changed before the car reaches it, and thereby the car is thrown on a different track from the engine.

When the order for making this flying shift had been received, the crew immediately set about executing the order. Fannin, the conductor, went to the cut-off switch on the main track; Kent got on top of the car to "ride" it—that is, to give signals to slack the engine, the signals to uncouple, and for the engine to go ahead after the coupling-pin had been removed, and to put on the brake to stop the car; Thomas got on the foot-board at the rear of the tender to uncouple the car, and was holding on to the iron rod placed there to keep from falling off while uncoupling the car; the engineer, Mr. Fadden, alone was not discharging his duty, but had turned his engine over to one Henninger, an inexperienced fireman, who had only been in the service of the company for three or more weeks, and had never been in the service of a railroad before. And it is shown that the conductor who represented the company knew the fact that this raw and inexperienced engineer was running the engine, and must have known that Thomas was acting as brakesman.

Under these circumstances they started to make this dangerous flying or running switch. At the proper time Kent signalled the fireman to slack up. The fireman, however, did not slack the engine as he should have done, by simply shutting off the steam without reversing the engine. He did the very opposite. He did *not* shut off the steam, but slackened by *reversing* the engine, and as a consequence the cylinders got full of steam, and of all this, Thomas, by reason of his position, his back being to the engine, was ignorant. When the engine slackened, Thomas withdrew the coupling pin and cut loose the engine from the car. Kent then signalled the fireman to go ahead, when the fireman, without shutting off the steam, threw the lever forward as far as it would go, thus

giving full effect to the steam that had accumulated in the cylinders. This accumulated steam being thus brought suddenly into full play, " caused the engine to start or jump suddenly forward with quick motion with such great force as to jerk Thomas off the board and break his hold on the iron rod, and threw him on the track." He fell, was run over by the car, and his right foot, leg, and arm were so crushed that he died in five hours and some minutes thereafter. He was 26 years old, and was getting $1 35 per day. He left a widow and one child about one year old, and another was born about five months after his death.

Such, in brief, say the counsel for the defendant in error, in their note, is a fair statement of the evidence in the case when viewed, as it must be, upon a demurrer to the evidence; and after a careful examination we are satisfied the statement is true.

Now upon these facts the court below has given judgment for the plaintiff, as we have seen. Ought this judgment to be disturbed? We think not.

It was unquestionably the duty of the company to provide and keep a competent engineer to run the engine. This it impliedly contracted to do when Thomas entered the service of the company, and he had the right to rely upon the presumption that they would discharge their duty in this respect. Now did they perform this duty by permitting the engineer to turn over the management of the engine to a raw and inexperienced man, who, far from being an engineer, was just learning the duties of a fireman. Surely to ask the question is to answer it. But it is said that this was the act of the engineer, and that the engineer and brakesman are fellow servants, and that this negligence of the engineer was one of the risks Thomas assumed when he entered into the service of the company. However, this may be ordinarily, for we do not desire to express any opinion upon the point, it is perfectly clear that it can afford the company no protection in this case. For

Opinion.

here the company was represented by its *alter ego*, the conductor, who saw everything that was done, and *permitted* the duties of the engineer to be discharged by this inexperienced apprentice. Had he thought for a moment, he could almost have foreseen the inevitable result. It is said, however, that that there is no allegation of the failure of the company to keep a competent engineer in the declaration, and, therefore, that question is not in issue. We attach no importance to this objection. The declaration details all the facts of the case with the utmost particularity, especially that the engine was being managed and run by a fireman of little or no experience in the management of the engine, and this was all that was necessary to advise the company what complaint it was called upon to answer.

It is clear beyond controversy that the negligence of the company contributed to and had a share in producing the accident, and this renders the railroad company liable, even though the negligence of a fellow servant of the plaintiff was contributory also. This has been held over and over again. *Grand Trunk Railway* v. *Cummings*, 106 U. S., 700; *Richmond and Danville R. R. Co.* v. *George*, 88 Va. R., 229; Lawson's Rights, Remedies and Practice, p. 543, sec. 307. This is decisive of the case. The judgment of the circuit court of Pulaski county is right and must be affirmed.

JUDGMENT AFFIRMED.

NOTE.—Negligence of railroad companies in respect to flying switches is treated of in note to *Kentucky Central R. R. Co.* v. *Smith*, 18 L. R. A., 63.—*Reporter.*