THE LUCKENBACH.

(District Court, E. D. Virginia.   April 2, 1906.)

1. EVIDENCE—PRESUMPTION FROM FAILURE TO PRODUCE.
    Where the evidence was conflicting as to whether a rope, the parting
    of which caused the death of a seaman, was defective, the doubt should be
    solved against the vessel because of her failure to produce the rope
    which was in her possession.
    [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§
    95, 98.]

2. MASTER AND SERVANT—NEGLIGENCE OF BOTH MASTER AND FELLOW SERVANT.
    A vessel was liable for the death of a seaman who was thrown over-
    board by the parting of a defective trip line attached to the davit of the
    hawse pipe as the block and tackle was being drawn back after lower-
    ing the anchor, though the accident was caused by the act of a fellow
    servant in improperly seizing hold of the fish line which supported the
    block, thereby placing the strain and weight on the trip line, which
    was not intended to be used for such purpose, as it was incumbent on
    the vessel to furnish such a rope as would provide against this con-
    tingency.
    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig.  Master and
    Servant, §§ 515, 518–523, 526.
    Concurrent negligence of master and fellow servant, see note to Maupin
    v. Railway Co., 40 C. C. A. 236.]

3. SAME—HAZARDOUS WORK—PRECAUTIONS.
    Where, in moving the anchor of a ship under way at full speed, her
    oval deck at the place where the work was being done was covered with
    ice and sleet, and two of the five seamen raising the block were con-
    fessedly incompetent, extraordinary precautions should have been taken
    to prevent accident, and only safe instrumentalities used.

4. DEATH—DAMAGES—AMOUNT OF AWARD.
    An award of $2,500 allowed for the death of a competent seaman, 26
    years old, who was able to earn $20 per month.
    [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§
    120–130.]

In Admiralty.   Libel to recover damages for death of seaman.

Thomas H. Willcox and Gordon Paxton, for libelant.

Floyd Hughes and J. L. Jeffries, for respondent.

WADDILL, Jr., District Judge.   The libelant sues to recover dam-
ages for the death of his intestate, who fell overboard and was drowned
while engaged in arranging to cast anchor on the steamship Lucken-
bach as she was coming into Hampton Roads, near the mouth of the
Elizabeth river, preparatory to anchoring at Lamberts Point; the con-
tention being that the accident occurred because of the defective con-
dition of the "trip" line attached to the block used in connection with
the lowering of the anchor by the davit to the hawse pipe, as the block
and tackle was being drawn back after lowering the anchor.  The case
turns upon the question of whether or not the respondent furnished
to the libelant's intestate, a sound, safe, and suitable rope with which
to perform the work required of him.   The evidence for the libelant
is clear and strong that the attention of the ship's representative had
been called prior to the accident, to the defective condition of the rope

furnished, that gave way and caused the accident; and that it was unsuitable and unfit for the work. The respondent disputes the correctness of this position, and claims that the rope was new, and became unfastened, and that there was no defect in it.

Upon the whole case, the conclusion reached is that whatever doubt there is on the question, should be solved in favor of the libelant; since the ship failed to produce the rope, which was, in her possession, that would have settled the question of its safe or unsafe condition, and whether it broke, or was new and inflexible, and became untied, thus causing the accident. Respondent insists that assuming that the rope may have parted as contended by libelant, nevertheless recovery should not be had, because the trip line was not intended to be used for hoisting purposes, and that the accident arose from the negligent manner in which the fellow servant of the libelant's intestate performed the work, by improperly seizing hold of or catching the fish line which supported the block, thereby placing the strain and weight on the trip line, which was not intended to be used for such purpose. The conclusion reached respecting this matter is that it was incumbent upon the ship to furnish such a rope as would provide against this contingency; that is to say, taking into account the manner in which it had been usually handled, they ought to have anticipated that in raising the block and fish line, the weight might be thrown upon this trip rope; and hence that the negligence of the fellow servant in bringing about this condition, if true, would not serve to relieve the ship from liability. The negligence of the fellow servant will not serve to relieve the master from liability, where the accident arises as the result of the negligence of such servant concurring with that of the master in failing to furnish proper appliances. Grand Trunk Ry. v. Cummings, 106 U. S. 700–702, 1 Sup. Ct. 493, 27 L. Ed. 266; Rose's Note, vol. 10, 438, 439; The Phœnix (D. C.) 34 Fed. 760; Clyde v. R. & D. R. R. Co. (C. C.) 59 Fed. 394; The Joseph B. Thomas, 86 Fed. 658, 664, 30 C. C. A. 333, 46 L. R. A. 58; R. & D. R. R. v. George, 88 Va. 223, 228, 13 S. E. 429; N. & W. R. R. v. Thomas, 90 Va. 209, 17 S. E. 884, 44 Am. St. Rep. 906; N. &. W. R. R. v. Ampey, 93 Va. 108, 130, 25 S. E. 226.

The evidence tends strongly to show that the trip line in use at the time of this accident was not of the size ordinarily used for such purposes; and certain it is, it was much smaller than the one found in use on the vessel about 10 days later, when the respondent caused a survey to be taken of her appliances, which was offered in evidence in this case; but whether the line should have been large or small, there would seem to be no good reason why one sufficiently strong to support the weight to which it was subjected on this occasion, which did not exceed 500 pounds, and which was estimated as low as 140 pounds, should not have been furnished. The highest weight testified to of the blocks and tackle was 500 pounds. Counsel for libelant insists, moreover, that his decedent was not furnished a safe place to work on the occasion in question; and that by reason of the peculiar whaleback formation of the deck of the ship at that point, it was negligence to attempt to raise and swing out the anchor with the ship go-

ing at full speed; a section of 12 feet of the rail having been removed to allow the anchor to be swung out over the side of the vessel. The court is not prepared to say that it was negligence on the part of the ship in that respect, for which it should be held liable; but is of opinion that in moving the anchor, with the ship under way at full speed; her oval deck at the place where the work was being done, covered with ice and sleet, and with two out of four of the seamen working with decedent in raising the block, confessedly incompetent, extraordinary precautions should have been taken to prevent accidents, and certainly only safe instrumentalities used in an operation under such circumstances.

It follows from what has been said that the libelant is entitled to recover; and the usual difficulty is presented of assessing the amount of damages that should be awarded. Taking into account the age of the deceased (26 years), and his being able to earn at the time of his death some $20 per month, he being a competent seaman, and apparently a good man, the court thinks an award of $2,500 is reasonable under the circumstances, and a decree for that amount may be entered.