CLYDE et al. v. RICHMOND & D. R. CO., (GARST, Intervener.)

(Circuit Court, N. D. Georgia. January 18, 1894.)

1. INJURY TO SERVANT — CONCURRENT NEGLIGENCE OF MASTER AND FELLOW SERVANT.

Receivers operating a railroad are liable for injuries to a fireman from derailment of a train, caused by the worn condition of a rail over which the train was run by the engineer at a speed greater than that authorized by the schedule, though but for such improper speed the derailment would not have happened.

2. SAME—PROXIMATE CAUSE.

In such a case the condition of the rail is as much a present and effective cause of the derailment as the rate of speed.

3. APPEAL—WEIGHT OF EVIDENCE—FINDINGS OF MASTER.

The finding of a master that a rail of a railway track was so worn as to render its use negligence, made on conflicting testimony, and an examination of the rail by him in person with counsel, will not be reviewed.

4. PLEADING—AMENDMENT.

When a master has finished the hearing on an intervener's claim for personal injuries, and is considering the case and preparing his report, an amendment setting up a distinct ground of negligence as a basis of recovery is too late.

In Equity. Petition by James E. Garst, intervening in a suit by William P. Clyde and others against the Richmond & Danville Railroad Company, and claiming damages for personal injuries against the receivers of said railroad appointed in said suit. Heard on exceptions to master's report. Judgment for intervener.

Arnold & Arnold, for intervener.

Jackson & Leftwich, for defendants.

NEWMAN, District Judge. This was an action to recover damages for personal injuries received by the intervener in an accident to, and derailment of, a train on the Richmond & Danville Railroad, operated by Huidekoper and Foster, receivers of this court. The intervener was a fireman on the wrecked train, was in the discharge of his duties on the engine, and conceded to be entirely free from fault himself in the matters which caused the injuries. The wheels of the tender first left the track, some cars were drawn from the rails, and the tender was turned over. The plaintiff, Garst, when in the act of jumping, was thrown about 30 or 35 feet, according to

his testimony, and was badly hurt. No question is made in the case as to the fact of the injury, and as to the amount of the special master's finding in his favor,—$2,500.

The case comes before the court now upon exceptions to the special master's report, and, while there are a number of exceptions, the real issue and the controlling one in this case is as to whether or not there was any negligence on the part of the receivers for which they were responsible. The special master found that the cause of the accident was the worn condition of the outer or bearing rail (the accident happening on a curve) at the point where the derailment occurred, combined with the speed of the train, which he finds to have been considerably greater than that which the schedule authorized at the time of the accident.

The statute of this state (Code, § 3036) which provides that a railroad company shall be liable to an employe for damages for injuries sustained by reason of the negligence of a co-employe, when the employe injured is free from fault, has been held by the supreme court of this state to be inapplicable in a case against a receiver who is engaged in operating a railroad under appointment of court. Henderson v. Walker, 55 Ga. 481. The speed of the train is not set up in the declaration as a substantial ground of negligence. The negligence relied upon is the worn condition of the rail, which it is said was such as to make the defendant receivers guilty of negligence; and that, the evidence showing that this negligence, and the negligence of the engineer in running the train at the improper rate of speed, each contributing to cause the injury, the case is one which authorizes and justifies recovery.

From what is distinctly and expressly found by the master in his report, and from what must be necessarily inferred from his finding, it seems that the speed of the train would not have resulted in an accident had there been a proper and suitable rail at the point where the accident occurred, and that the worn condition of the rail would not have caused the derailment had the train not been running at an improper rate of speed. So that it is contended for the receivers that, they having furnished a rail sufficient to carry the train at the rate of speed they expected and authorized it to run, there can be no recovery against them. It is on this contention of defendants that their case must rest as to the question referred to, and upon which the case seems to turn. Now, is this argument sound, namely, that where the employer furnishes to the employe material and appliances which are defective and unsafe, but which, if used by the employe in the manner directed by the employer, would not result in injury to any one, and the employe fails to obey instructions, and to use the defective machinery or appliances in the manner directed, and injury results to a coemploye from this defective and unsafe condition, combined with the failure of the employe to properly use them, the employer is relieved from liability from damages to such coemploye?

The rule clearly established at common law is that where an employe is injured by the negligence of the master in furnishing defective machinery and appliances, combined with the negligence of

a fellow servant, both contributing thereto, the master is liable. The case of McMahon v. Henning, 3 Fed. 353, was a suit by an employe against a receiver for damages for injuries sustained in the service of the receiver. Plaintiff sought to recover upon two grounds: First, that his coemploye was guilty of negligence in running the cars which were to be coupled at a dangerous rate of speed; second, that the defendant receiver furnished cars dangerous and defective in their construction. The case was heard in the United States circuit court for Kansas, and in that state there was a statute similar to the statute in Georgia, and the construction given the statute in Georgia, which has been referred to, was contended for there. The court, in the opinion delivered by McCrary, circuit judge, and concurred in by Foster, district judge, left this question undecided; saying that its decision was unnecessary, in the view taken by the court of the case, which was that the receivers were liable to the plaintiff, independently of this question. The court (on page 355) uses this language:

"This presents the question whether, upon the facts found by the jury, the defendant is liable, independently of the statute, and upon the principles of the common law. The rule of the common law is that a master is not liable to his servant for the negligence of a fellow servant, and it was to abrogate this rule in the state of Kansas that the statute was enacted. But the common-law rule has never, to my knowledge, been carried so far as to permit the master to exempt himself from the consequences of his own personal negligence by showing that one of his servants (not the party injured) has been likewise negligent. In the present case the master was negligent, while the plaintiff—the injured party—was not negligent. This makes out a case at common law, notwithstanding the negligence of Bowles, the fellow servant. The plaintiff recovers upon the ground of the negligence of the defendant, which is, of itself, a good and sufficient ground. The doctrine of contributory negligence has, no application to such a case. That doctrine applies only to cases of negligence on the part of the person injured. The true doctrine of the common law is that the master is liable to his servants, as much as to any one else, for the consequence of his own negligence; and it is no defense for him to show that the negligence of a fellow servant (for which he was not responsible) also contributed to bringing about the injury. Shear. & R. Neg. § 89; Fifield v. Railroad, 42 N. H. 225; Hough v. Railway Co., 100 U. S. 213; Cayzer v. Taylor, 10 Gray, 274; Paulmier v. Railroad Co., 34 N. J. Law, 151, 157."

In Booth v. Railroad Co., 73 N. Y. 38, this is held, (quoting second headnote:)

"If an injury is caused to an employe of a railroad corporation by the neglect of the corporation to send out a sufficient number of brakemen on a train, and the negligence of the engineer in running the train, the corporation is liable therefor."

In this last case the duty of the master, it was held, was to furnish a proper number of employes to do the work assigned them, which is similar, of course, to the duty to furnish suitable machinery and appliances.

In the case of Cone v. Railroad Co., 81 N. Y. 206, the rule is stated in this way:

"A master who negligently employs unsafe and defective machinery is liable to his servant injured in the use of it by means of its defective condition, although the negligence of a coservant contributed to the injury."

This question has been before the supreme court of the United States in Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, and the rule announced in the decisions just cited is clearly sustained. The opinion of the court shows that the plaintiff claimed that the collision which resulted in his injury, he being a servant of the company, was caused by the fault and neglect of the company, and that the company claimed that it was caused by the negligence and disobedience of a fellow servant, and that this was the issue at the trial. The court below, on the trial of the case, gave the jury this instruction:

"That if Noyes [the person claimed to be a coservant] was negligent, and if the company was also wanting in ordinary care and prudence in discharging their duties, and such want of ordinary care contributed to produce the injury, and the plaintiff did not know of such want of ordinary care and prudence, the defendant would be liable; that, if two of those causes contributed, the company would be liable; that the mere negligence of Noyes, of itself, does not exonerate them, if one of their own faults contributes."

There was a verdict for the plaintiff, and exception to the instruction just quoted. The supreme court say:

"In the instruction which was given we find no error. It was, in effect, that, if the negligence of the company contributed to—that is to say, had a share in producing—the injury, the company was liable, even though the negligence of a fellow servant of Cummings was contributory also. If the negligence of the company contributed to, it must necessarily have been an immediate cause of, the accident, and it is no defense that another was likewise guilty of wrong."

The case of Cayzer v. Taylor, 10 Gray, 274, was also an action for an injury received by a servant in the master's employment. One of the exceptions made by the defendant in that case involved the same question as that made by the defendant in this case. The exception was to the refusal of the presiding judge to instruct the jury that, if the accident would not have happened without negligence on the part of the engineer, the defendant would not be liable. The court say:

"We think such instruction could not have been given. The default of the defendant might have been not only in having a boiler imperfectly constructed and guarded, but an incompetent and habitually careless and negligent engineer. It is now well-settled law that one entering into the service of another takes upon himself the ordinary risks of the employment in which he engages, including the negligent acts of his fellow workmen in the course of the employment. Farwell v. Railroad Co., 4 Metc. (Mass.) 49; King v. Railroad Co., 9 Cush. 112; Gillshannon v. Railroad Corp., 10 Cush. 228. It has not been settled that the master is not liable for an injury which results from the employment of an incompetent servant, or use of a defective instrument. If the defendant employed a competent engineer, and used a boiler properly constructed and guarded, he would not be liable for injuries resulting from an act of carelessness or negligence of such engineer. But we are not prepared to say that, if one uses a dangerous instrumentality without the safeguards which science and experience suggest or the positive rules of law require, he is not to be responsible for an injury resulting from such use because the negligence of one of his servants may have contributed to the result, or because a possible vigilance of the servant might have prevented the injury. The very object and purpose of a safeguard like the fusible plug are protection against the occasional carelessness and negligence of the engineer. It is intended to be, in some

degree, a substitute for his vigilance,—to keep watch if he nods. To say that the master should not be responsible for an injury which would not have happened had a safeguard required by law been used, because the engineer was negligent, would be to say, in substance and effect, that he should not be liable at all for an injury resulting from the failure to use it."

In all of these cases, as well as the last case, it might have been contended that the injury would not have resulted but for the negligence of the fellow servant. The rule established by the foregoing decisions is clearly correct, and the master cannot escape liability for the consequence of his own negligence because a fellow servant was also guilty of negligence contributing to the injury.

It is urged with great earnestness that the rail complained of, where the tender left the track, was not worn to such an extent as to make an actionable defect; that it was not worn to an extent to render it unsafe for ordinary and general use in running railroad trains over it. The evidence is conflicting as to the extent of the wear of the rail, running from one-twelfth of an inch to as much as a half an inch. The special master not only heard considerable evidence upon this question, but examined the rail in person, with counsel in the case, and he finds against the defendant on this question. He finds that the rail was sufficiently worn to constitute negligence. The court is not prepared to say that the master's finding was erroneous on this subject. It is a question of fact for him to pass upon; he saw the witnesses, saw the manner of their testimony, and examined the rail in person.

It is contended that, even if the defendants were guilty of negligence, their negligence was not the proximate cause of the accident. If the worn condition of the rail was instrumental at all in causing the derailment, it was just as much a present and effective cause of the accident as was the improper rate of speed. It was not in any sense a remote cause, for, whatever it contributed, it contributed at the time and place. Both the improper speed of the train and the worn condition of the rail (assuming the report of the master to be correct) were the proximate causes.

The conductor of this train was on the engine with the engineer at the time the accident occurred, and on the authority of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, it is claimed that his presence there, and his necessary acquiescence in the improper rate of speed, makes the receivers responsible for his act, under the rule in the case named. But, there being no averment in the intervention placing the right to recover on this ground, the intervener cannot rely upon it as a substantive ground of negligence justifying a recovery. The only ground of negligence set out in the intervention, and which is supported by the evidence, is that of the worn condition of the rail. An amendment alleging a high rate of speed as a ground of negligence was presented to the court by the intervener, with the request for an order allowing it, after the evidence in this case had all been heard by the special master, after the argument of counsel had been concluded, and after the master had taken the case up for consideration, and was said to be engaged in the preparation of his report. The court refused to allow the amend-

ment at that stage of the proceedings, on the ground that it came too late. Even conceding the right of an intervener to amend by leave of the court, in a case referred to a special master, during the whole time the master is engaged in consideration of the case, it is certainly too late after the master has entirely finished the hearing, and is engaged in considering the case and in preparing his report, to amend the pleadings. The intervener has certainly had time enough, and abundant opportunity, during the taking of the evidence and during the argument before the special master, to discover any oversight in the pleadings, or any lack of conformity of the pleadings to the proof; and it seems entirely too late, after the case is thus closed, to come in with a distinct and separate ground of negligence, and have it allowed as a basis of recovery. So that the improper speed of the train is not a ground for recovery in this case, and is only considered, as has been hereinbefore expressed, in connection with the worn condition of the rail, for the purpose of determining whether such wear of the rail was negligence which caused or contributed in such way to the disaster as to render the receiver liable.

It is further claimed by counsel for the receivers that the derailment which resulted in the injury to the intervener was an unavoidable accident,—one of those accidents which occur without any apparent cause; at least without fault attributable to any one. Tracks are constructed, and rails are laid, for engines and cars to pass over in safety, and engines and cars are constructed for the purpose of passing regularly and safely over the tracks. When a train, or any part of it, leaves the track, something is wrong, and any tribunal investigating the matter will naturally look for a cause. No other reasons for the derailment appear in this case except those which have been referred to. Nothing whatever was found to be wrong with the engine or tender; there was no trouble or defect with the machinery of any kind, so far as could be ascertained; nothing was placed upon the track; and the only two things which the master could find to which to attribute the accident were the worn condition of the rail and the improper rate of speed. Therefore, he naturally and properly found in accordance with this conclusion.

Conflicting questions of fact were for the determination of the special master in this case. The presumption is that the decision of the special master and his findings on these conflicting questions were correct. The rule universally recognized is that they will not be lightly set aside, but that it must clearly appear that he has made an error or mistake. The case here is not one which, under this rule, justifies an interference with the conclusions of the master, and, the amount found for the intervener being satisfactory, the report must stand, and judgment be rendered in favor of the intervener in accordance therewith. Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, Callaghan v. Myers, 128 U. S. 617, 666, 9 Sup. Ct. 177; Kimberly v. Arms, 129 U. S. 512, 524, 9 Sup. Ct. 355.