UNITED STATES v. ATCHISON, T. & S. F. RY. CO. et al.[1]

(District Court, N. D. Illinois, E. D.   May 4, 1908.)

1. CARRIERS (§ 20*) — CARRIERS OF LIVE STOCK — TWENTY-EIGHT HOUR LAW —"WILLFULLY."

In Act June 29, 1906, c. 3594, § 3, 34 Stat. 608 (U. S. Comp. St. Supp. 1907, p. 919), known as the "28-hour law," which prohibits carriers of live stock from keeping the same confined in cars, etc., for more than 28 consecutive hours without unloading for rest, water, and feeding, "unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight," and imposes a penalty on any carrier which "knowingly and willfully" fails to comply with its provisions, the word "willfully" is not used as implying a vicious or evil intent, but as meaning intentionally or voluntarily.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468, 7481, 7835, 7836.]

2. CARRIERS (§ 211*)—CARRIAGE OF LIVE STOCK—VIOLATION OF ACT—DEFENSES.

Failure of a railroad company to provide unloading stations, congested traffic conditions reasonably to be anticipated from past experience, and break downs en route resulting from negligent operation or omission to furnish properly equipped and inspected engines and cars are not such accidental or unavoidable causes as will relieve the carrier from liability for a violation of such act.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

3. CARRIERS (§ 211*)—PROVISION RELATING TO SHEEP—TIME OF CONFINEMENT AUTHORIZED.

Under Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibiting carriers of live stock from keeping the same confined for more than 28 consecutive hours without unloading for rest, water, and feeding except that upon the written request of the owner or person in charge the time of confinement may be extended to 36 hours, and provided "that it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime in the case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of 36 hours," the carrier is required to unload sheep within 28 hours, unless that period expires in the night-time, and, in any event, within 36 hours.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

4. CARRIERS (§ 20*)—PENALTY FOR VIOLATION—SEPARATE OFFENSES.

Under the penal clause of such law, each shipment of stock confined beyond the period prescribed in violation of its provisions constitutes a separate offense.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

In re Violation of Twenty-Eight Hour Law.

Edwin W. Sims, U. S. Atty., and Ben Davis, Asst. U. S. Atty.
James L. Coleman, for Atchison, T. & S. F. Ry. Co.
Samuel A. Lynde, for Chicago & N. W. Ry. Co.
John A. Russell, for Chicago, M. & St. P. Ry. Co.
John G. Drennan, for Illinois Cent. R. Co.
Benjamin S. Cable, for Chicago, R. I. & P. Ry. Co.
Chester M. Dawes, for Chicago, B. & Q. Ry. Co.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LANDIS, District Judge. In the matter of the United States versus the Atchison, Topeka & Santa Fé Railway Company the Chicago & Northwestern Railway Company, the Illinois Central Railroad Company, the Chicago, Milwaukee & St. Paul Railway Company, the Chicago, Rock Island & Pacific Railway Company, and the Chicago, Burlington & Quincy, being actions to recover penalties under the statute commonly known as the "Twenty-Eight Hour Law," and having been submitted to the court mainly on pleas of guilty, but, as in the case of the Northwestern road particularly, to some extent on pleas of not guilty, and a stipulation of facts, supplemented by evidence introduced by the defendant in open court. This statute, which succeeded the old statute on the same subject, and which had been in force for about 30 years without accomplishing anything except its own discredit by reason of its too drastic provisions, was passed in 1906 (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]). It provides that no railroad company, express company, car company, common carrier other than by water, or the receiver, trustee or lessee, etc., shall confine cattle, sheep, swine, or other animals in cars, boats, or vessels of any description for a longer period than 28 consecutive hours, without unloading the same in a humane manner into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight. Provided that on the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading or other railroad form, the time of confinement may be extended to 36 hours. In estimating such confinement the time consumed in loading and unloading shall not be considered, but the time which the animals have been confined without such rest or food or water on connecting roads shall be included; it being the intent of this act to prohibit their continuous confinement beyond the period of 28 hours, except upon the contingencies hereinbefore stated, provided that it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime, in case of sheep, the same may be continued in transit to a suitable place for unloading, subject to the aforesaid limitation of 36 hours. Section 3 is the penal section. Any railroad company, express company, car company, common carrier other than by water, etc., which knowingly and willfully fails to comply with the provisions of the preceding sections, shall for every such failure be liable for and forfeit and pay a penalty of not less than $100 nor more than $500. This is followed by a section specifying the district where the suit may be brought and by a repeal of the former act. It appears from the testimony, and from the facts presented by the several stipulations, that the various stock carrying railway companies centering here have adopted the practice of requesting the shipper at the time he turns over his stock for transportation to execute a written request that the railway company shall not unload his stock, provided the 28-hour period expires while they are in transit, and authorizing the carrier to continue the confinement to 36

166 F.—11

hours. This has practically become the policy of the several carriers, and has resulted in the practical abrogation of the 28-hour law and the substitution in its place of a 36-hour law. I am not prepared to say that Congress did not contemplate that the carriers should do this thing. That Congress did so intend may be fairly inferred from the language of the statute, and that Congress did not so intend may also be as fairly and as rationally inferred. My own notion is that Congress intended to pass a 28-hour law.

For the Chicago & Northwestern Railway Company it has been urged that there should be a finding in favor of that company, for the reason, as claimed, that the evidence does not show the defendant's failure to comply with the law to have been willful. That is to say, the failure is not shown to have been dictated by a vicious intent to do an evil thing. In support of this contention two court decisions are cited, namely, Felton v. United States, 96 U. S. 699, 24 L. Ed. 875, and United States v. Louisville & Nashville Railroad Company (D. C.) 156 Fed., cited in counsel's brief, at page 863, but found at page 195 or 182 or 193 of the volume referred to. In counsel's brief, referring to this case, the statement is made that in another district the court held that in a prosecution of this kind this kind of willfulness must be shown by the evidence before a conviction can be had, and that the court had under consideration what the counsel in his brief refers to as the 36-hour law. I cannot find any case in which the court referred to laid down that rule in considering this statute. I do find in the decisions under the safety appliance act where the court gets close to this question with a line of reasoning to which it is impossible for me to subscribe. The Supreme Court authority in Felton v. United States, referred to in counsel's brief, dealt with a prosecution for an alleged violation of the law which penalized the commission of fraud upon the public revenue. The thing prohibited was an act on the part of a distiller of whisky designed to evade the payment of Government tax. The statute provided that, if the distiller willfully did the thing prohibited, he should be punished. The facts showed (and the jury so found specially) that the defendant acted in the utmost good faith to prevent the waste and destruction of a considerable amount of property on which the government would have lost its revenue had the defendant not proceeded as he did. The Supreme Court held that this negatived the charge that the defendant willfully sought to defraud the public revenue.

But I am unable to see the application of this ruling here. While it is true that the penal section of the act now under consideration requires the imposition of the penalty on a carrier who knowingly and willfully fails to comply with the provisions of the law, it clearly appears from an examination of the first section, which defines the thing prohibited, that Congress did not use the word "willfully" in the penal section as denoting an evil intent or a bad and malignant heart on the part of the carrier. Read together, those two sections provide that any carrier that shall knowingly and willfully confine live stock in cars for a period longer than 28 consecutive hours, unless prevented from unloading by storm or other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and fore-

sight, shall for every such offense be liable to the penalty.  In the selection of this language Congress could not have inserted the word "willfully" as implying a vicious intent to injure, for certainly Congress did not even suspect that any transportation company would ever confine live stock beyond the period prescribed for the deliberate purpose of inflicting injury on the stock or of imposing a loss upon the shipper or deteriorating the product of the slaughter house.  It is more rational to conclude that Congress used the word as synonymous with "voluntarily" or "intentionally," and, bearing in mind the object sought by the law, the legislative intent seems to have been to require the imposition of the penalty in all cases of confinement beyond the period prescribed, except only when resulting from storm or from accidental or other unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight; and in my opinion due diligence and foresight require the carrier to equip and maintain and operate its road in such a way as railroad experience has shown is reasonably necessary to avoid confinement beyond the time prescribed.  Failure to provide unloading stations, congested traffic conditions reasonably to be anticipated from past experience, and break-downs en route resulting from negligent operation or omission to furnish properly equipped and inspected engines and cars are not accidental or unavoidable causes which cannot be anticipated and avoided by due diligence and foresight.  There is a special provision of this law relating to sheep.  After providing that the length of confinement shall not be longer than 28 hours except where the shipper authorizes it by a written request extending it to 36 hours, section 1 proceeds:

"In estimating such confinement the time consumed in loading and unloading shall not be considered, but the time which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies herein before stated: provided, that it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime, in case of sheep, the same may be continued in transit to a suitable place for unloading, subject to the aforesaid limitation of thirty-six hours."

For the Northwestern Company, it is contended that it was the intention of Congress as thus expressed to except sheep from the operation of the 36-hour provision when the 36-hour period expired in the nighttime; it being urged that the provision "subject to the aforesaid limitation of thirty-six hours" should be rejected by the court as meaningless.  In other words, the claim is that, if the 36-hour period expire one hour after the day has expired, the carrier is authorized to continue the confinement of such animals until that night ends and the next day has begun.  I am unable to find any justification for this argument in the express provision referred to, and certainly it is squarely opposed to the great object sought by the law as plainly disclosed by the language of the act taken as a whole.  To my mind the meaning of this express provision is that, where the 28-hour period expires in the nighttime, the carrier is authorized to continue the confinement of sheep for 36 hours, even without the shipper's request, but not longer than 36 hours, as declared by the proviso "subject to the aforesaid limitation of thirty-six hours."  Where the 36-hour period will expire in the

nighttime, the carrier should unload during the preceding day. The court will not impute to Congress the idle use of words in a law prescribing a rule of conduct and imposing penalties for its violation, at least where the common and ordinary meaning of the words employed is in harmony with the other provisions of the law, and their exclusion would defeat its manifest purpose.

For the Santa Fé Company the argument has been made that the act does not authorize more than one prosecution for confinement of several shipments of stock hauled in one train. Counsel has submitted to the court, in support of his claim, a number of authorities construing other statutes which tend to support his position. Some of them are rebate cases where courts have held that where the interstate commerce law forbidding discrimination has been violated in favor of the shipper during a long period of time by the shipper paying the regular rate from day to day and from week to week and from month to month for many months, and after the lapse of a long period of time the railroad company sends to the shipper a check paying back to the shipper part of the regular lawful rate thus paid by the shipper, that that is but one offense. Up to this time neither the Supreme Court of the United States nor any other court authorized to lay down a rule for the guidance of this court has subscribed to that doctrine, and until that is done, being of the opinion that it is not the law, I shall not adopt it as the rule of these cases. The words of this statute clearly forbid the application of that rule, providing, as the statute does, that each shipper may waive the 28-hour provision, so that as to his shipment the carrier may lawfully continue the confinement for 36 hours. The penal clause provides for an imposition of the penalty for each offense, and, in my view of the law, there are as many offenses as there are shipments confined beyond the period prescribed.

There have been arguments by various counsel against the imposition of the penalty in some of these cases, on the ground that traffic conditions at the Chicago terminals, break-downs on the road, blocked crossings, and one thing and another in various instances prevented the carrier from getting the cattle to market within the time prescribed. What I have said indicates the court's mind with respect to those arguments. I am bound to say that, when this was first suggested, my impression was that the proposition was not without merit, but, on reflection, I see no escape from the conclusion that, if the carrier desires a break-down or wreck to excuse confinement beyond the period prescribed, the carrier must show that the break-down or wreck did not result from a cause which due diligence and foresight would have anticipated and avoided. I believe that is the meaning of this law. However, in a case of that character, there should not be a penalty beyond the minimum.

There will be a finding against the defendant in the several cases submitted on the plea of not guilty. In most of the cases a penalty of $100 has been fixed. In others the court has departed from the standard. In consideration of special facts and circumstances disclosed, judgment will be entered for the amount specified in the memorandum filed with the clerk.