UNITED STATES v. KANSAS CITY SOUTHERN RY. CO.

(District Court, W. D. Arkansas. July 3, 1911.)

No. 216.

1. RAILROADS (§ 230*)—SIXTEEN-HOUR LAW—CONSTITUTIONALITY.
    Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), limiting the hours of service of railway employés, is constitutional.
    [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 230.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. RAILROADS (§ 230*)—SIXTEEN-HOUR LAW—CONSTRUCTION.

Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), limiting the hours of service of railway employés, should be liberally construed to accomplish its purpose to prevent accidents to trains and consequent injury to passengers and employés.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 230.*]

3. STATUTES (§ 228*)—PROVISOS—OFFICE.

Ordinarily the office of a proviso in a statute is to modify or restrain the enacting clause.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. § 228.*]

4. RAILROADS (§ 254*)—SIXTEEN-HOUR LAW—CONSTRUCTION.

A railway company, sued for violating Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), limiting the hours of service of employés, must bring itself strictly within the letter as well as within the reason of the proviso in section 3, exempting liability where delays result from act of God, etc.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

5. RAILROADS (§ 254*)—SIXTEEN-HOUR LAW—"ACT OF GOD."

An "act of God" within Act March 4, 1907, c. 2939, § 3, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), exempting railway companies from penalty for permitting employés to work overtime in case of "act of God," etc., is something which occurs exclusively by the violence of nature, and is an act which implies entire exclusion of all human agencies (citing 1 Words & Phrases, pp. 118–126).

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

6. RAILROADS (§ 254*)—SIXTEEN-HOUR LAW—"CASUALTY."

A "casualty" within Act March 4, 1907, c. 2939, § 3, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), exempting railway companies from penalty for working employés overtime in case of "casualty," etc., is an act proceeding from an unknown cause or an unusual effect of a known cause.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*

For other definitions, see Words and Phrases, vol. 2, pp. 1003, 1004; vol. 8, p. 7597.]

7. RAILROADS (§ 254*)—SIXTEEN-HOUR LAW—"UNAVOIDABLE ACCIDENT."

An "unavoidable accident," within Act March 4, 1907, c. 2939, § 3, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), exempting railway companies from penalties for working employés overtime in case of "unavoidable accident," is an inevitable accident which could not have been foreseen and prevented by using ordinary diligence, and resulting without the company's fault.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*

For other definitions, see Words and Phrases, vol. 8, pp. 7149–7151; vol. 8, p. 7822.]

8. TRIAL (§ 139*)—WITHDRAWING QUESTION FROM JURY—WHEN PROPER.

A question is properly withdrawn from the jury only when all reasonable men, exercising fair and impartial judgment, would draw the same conclusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 338–341; Dec. Dig. § 139.*]

9. RAILROADS (§ 254*) — SIXTEEN-HOUR LAW — EXEMPTIONS — "UNAVOIDABLE ACCIDENT."

Act March 4, 1907, c. 2939, § 3, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), exempting railway companies from penalty for working trainmen overtime in case of unavoidable accident or where delay results from an unforeseen cause, etc., does not apply where a delay in starting after

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a crew has gone on duty is caused by a connecting train being late, or through side-tracking to give passenger or superior freight trains right of way, or by hot boxes or through the locomotive getting out of steam.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

Action by the United States against the Kansas City Southern Railway Company. Verdict was directed for defendant. On motion by the plaintiff for new trial. Motion granted.

"This is an action instituted by the government to recover penalties for violations of the act of Congress entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170). There are 25 counts, each one charging a violation of the 16-hour provision of that act. The offenses were committed by requiring or permitting 5 employés on 5 trains of defendant to remain on duty for a longer period than 16 consecutive hours in connection with the movement of freight trains between Stilwell, in the state of Oklahoma, and Mena, in the state of Arkansas. Counts 1 to 5, inclusive, relate to the excess service of the train crew of train No. 73, drawn by engine No. 520, alleging that the employés on that train were on duty from 7:30 a. m. on February 7, 1910, to 1:25 a. m. on February 8, 1910, a period of 17 hours and 55 minutes. Counts 6 to 10 relate to the excess service of the train crew drawn by locomotive No. 519, alleging that the employés on this train were on duty a period of 17 hours and 35 minutes. Counts 11 to 15 relate to the excess service of the train crew on freight train drawn by locomotive No. 512, alleging that the employés on this train were on duty a period of 20 hours and 55 minutes. Counts 16 to 20 relate to the excess service of the train crew of freight train drawn by locomotive No. 477, alleging that the employés on this train were on duty a period of 17 hours and 20 minutes. Counts 21 to 25 relate to the excess service of the train crew of the freight train drawn by locomotive No. 527, alleging that the employés on this train were on duty a period of 16 hours and 45 minutes. As all the counts are practically identical except as to the number of the train and locomotive propelling it, the dates on which the violation is alleged to have been committed, the time during which the crews were on duty and the name and occupation of the employés, it is only necessary to set out the material allegations of one of the counts.

The first count, after alleging the jurisdictional facts, charges that "in violation of the above act of Congress the defendant, beginning at the hour of 7:30 a. m. on February 7, 1910, upon its line of railroad at and between the stations of Stilwell, in the state of Oklahoma, and Mena, in the state of Arkansas, within the jurisdiction of this court, required and permitted its certain conductor and employé, to wit, G. S. Harrison, to be and remain on duty as such for a longer period than 16 consecutive hours, to wit, from said hour of 7:30 a. m. on said day to the hour of 1:25 o'clock a. m. on February 8, 1910; that said employé, while required and permitted to be and remain on duty as aforesaid, was engaged in and connected with the movement of said defendant's train No. 73, drawn by locomotive No. 520, said train being then and there engaged in the movement of interstate traffic."

The answer of defendant denies all the material allegations in each count, and in bar to the action sets up the following pleas: "(3) If said employé did remain on duty for a longer period than 16 consecutive hours his remaining on duty was unavoidable, and was due to casualty and to unavoidable accident and to the act of God, and such delay was the result of a cause not known to the defendant or its officers or agents in charge of said employé at the time said employé left the terminal, and said delay could not have been foreseen." "(4) Further answering, the defendant states that if said delay occurred it occurred because said employé was acting as a crew of a wrecking or relief train."

The cause was tried to a jury, the late lamented Judge Rogers presiding. At the close of the evidence a peremptory instruction directing a verdict for the defendant on all counts was given by the court, and thereupon this motion for a new trial was filed on behalf of the government. That eminent jurist having departed this life before the hearing of this motion, the same came on for hearing before the writer of this opinion, presiding by assignment over the courts of the Western district of Arkansas.

Although the answer denies all the material allegations of the complaint. at the trial they were admitted to be true, and the cause was heard solely upon the third and fourth pleas of defendant to each count. The evidence on behalf of the defendant establishes the following facts:

The causes of the delay to the train which is the basis of the first five counts are as follows: The train started from Stilwell 2 hours and 50 minutes late, of which 15 minutes was on account of delay caused by meeting a passenger train; 30 minutes switching, as there was no switch engine there; 20 minutes making the air test; 45 minutes waiting for a connection, and 1 hour to meet another freight train. The next delay was 20 minutes at Windsor caused by a hot box; the next was 1 hour at Salisaw meeting trains; 40 minutes at Spiro picking up and setting out cars; 25 minutes at Panama setting out and picking up cars; 15 minutes at Shady Point meeting train; 1 hour and 55 minutes at Poteau of which 1 hour and 30 minutes delay was caused by being blocked by other trains; 15 minutes taking coal and water, and 10 minutes weighing cars; 10 minutes at Howe moving a car to the Rock Island station; 20 minutes at Houston cleaning fire by reason of poor coal the steam having given out; 50 minutes at Mile Post 363 waiting to get up steam.

The causes of the delay to the train which is the basis of counts 6 to 10 are as follows: Delayed at Stilwell 25 minutes by passenger train; 25 minutes making up the train; 15 minutes making the air test, and 15 minutes meeting a train; 10 minutes were lost at Brushy meeting a train; 20 minutes at Spiro for lunch; 45 minutes at Spiro meeting extra train; 15 minutes at Poteau to take coal and water and 40 minutes cleaning the fires; 20 minutes at Howard meeting a train; 1 hour and 5 minutes at Houston on account of another train taking water from the pipe direct as the tank had fallen down on February 19th and was not ready for use until March 10th; 50 minutes at Black Fork taking water for the engines; 1 hour and 30 minutes at Page meeting train: 50 minutes at Mile Post 359 the helper engine having run out of water necessitating getting it from the nearest water tank; 1 hour and 10 minutes at Howard waiting to get up steam.

The train upon which are based counts 11 to 15 was delayed for the following reasons: At Stilwell, the starting point, 10 minutes switching caboose; 35 minutes picking up ties; 20 minutes blocked by work train; 15 minutes to make air test; 15 minutes to take out bad order cars; at Bunch 15 minutes waiting for orders; 50 minutes at Gans meeting trains; at Spiro 30 minutes for lunch, and 10 minutes waiting for orders; Panama 15 minutes picking up cars, and 25 minutes for orders; 30 minutes at Mile Post 324 by reason of pulling out drawbar; at Poteau 20 minutes to take coal and water, 15 minutes setting out cars and 15 minutes waiting for orders; 20 minutes at Howe blocked by an extra train; 15 minutes at Heavener setting out cars; 1 hour and 10 minutes at Houston to let trains pass; 40 minutes at Mile Post 355½ by reason of an extra train getting water; 35 minutes at Mile Post 358 let extra train get steam; Howard 35 minutes in order to get steam, 25 minutes to let train pass, and 1 hour and 30 minutes to meet two other trains; 40 minutes at Mile Post 363 backing to Howard in order that other trains might pass.

The causes of the delays of the train on which counts 16 to 20 are based were as follows: At Stilwell, the starting terminal, 15 minutes by reason of being blocked by trains, 1 hour and 10 minutes on account of switching, 20 minutes testing air; 20 minutes at Lyon waiting for extra train; 50 minutes at Brushy waiting for trains; 25 minutes at Spiro for lunch; 25 minutes at Panama waiting for orders; Poteau 50 minutes for cleaning fires in locomotive,

15 minutes for taking coal and water, and 15 minutes for switching; 45 minutes at Heavener fixing a hot box and bad train line, and 25 minutes waiting for other trains; 45 minutes at Howard waiting for train.

The causes of delay for the train on which are based counts 21 to 25 are as follows: Stilwell 45 minutes making up train, 25 minutes testing the air, 20 minutes blocked by train, 5 minutes repairs on engine; at Lyons 15 minutes meeting a train; Spiro 50 minutes cleaning fires, and 25 minutes for eating; Panama 15 minutes setting out and picking up cars; 15 minutes at Shady Point meeting train; 20 minutes at Mile Post 322 to get steam; Poteau 2 hours and 5 minutes cleaning fires, 20 minutes taking coal and water, 10 minutes waiting for trains; Heavener 10 minutes to set out cars.

John I. Worthington, U. S. Dist. Atty., and P. J. Doherty, Sp. Asst. Atty.

Read & McDonough, for defendant.

TRIEBER, Dstirict Judge (after stating the facts as above). [1] The constitutionality of this act has been conclusively settled by the Supreme Court in Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878. Therefore, the only questions of law left for determination are the construction of the provisions contained in the proviso of section 3 of the act, so far as the evidence applies to them. That proviso reads:

"Provided that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officers or agents in charge of such employé at the time said employé left a terminal, and which could not have been foreseen; provided, further, that the provisions of this act shall not apply to the crews of wrecking or relief trains."

As there was no evidence whatever tending to show that the delay in any of the counts occurred because the employés or any of them were acting as members of the crew of a wrecking or relief train, the plea in the fourth paragraph of the answer may be disregarded, leaving for determination the defenses set up in the third paragraph only.

[2] The act being remedial, for the purpose of preventing accidents to trains and consequent injuries to passengers and employés, it is the duty of the courts to construe it liberally in order to accomplish the purpose of its enactment. Johnson v. Southern Pacific R. R. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

Experience has shown that many serious accidents to trains causing great loss of life or permanent disabilities to passengers, as well as employés, are often due solely to the fact that members of the train crew had become exhausted by reason of being required or permitted to remain on duty for too long a period, and therefore unable to give that care and attention necessary for the safety of the train. To prevent accidents from such causes the Congress, in its wisdom, enacted this statute prohibiting railroads not only from requiring any employé subject to the act to remain on duty for a longer period than 16 consecutive hours, but also "permitting" it.

[3] The defenses set up in defendant's third paragraph are in a proviso. The office of a proviso ordinarily is to restrain or modify the enacting clause of a statute. United States v. Dickson, 15 Pet.

141, 165, 10 L. Ed. 689; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; Leavenworth, etc., R. R. Co. v. United States, 92 U. S. 733, 758, 23 L. Ed. 634; Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807; Schlemmer v. Buffalo, etc., R. R. Co., 205 U. S. 1, 10, 27 Sup. Ct. 407, 51 L. Ed. 681; Boston Safety Deposit Co. v. Hudson, 68 Fed. 758, 15 C. C. A. 651; Gould v. New York Life Ins. Co. (D. C.) 132 Fed. 927; McRae v. Holcomb, 46 Ark. 306.

As to how a proviso should be construed Mr. Justice Story, in United States v. Dickson, said:

"The general rule of law which has ordinarily prevailed and become consecrated, almost, as a maxim in the interpretation of statutes, is that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its meaning. In short a proviso carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the words as well as within the reason thereof."

[4] From these authorities it follows that the defendant, to sustain its plea, must bring itself strictly within the letter as well as within the reason of the proviso in order to escape the penalty provided by that act.

[5] None of the evidence on behalf of the defendant would justify a finding that the delays were caused by "an act of God." While it is not advisable to give an exact definition of that phrase which will cover every phase, it has been generally defined as something which occurs exclusively by the violence of nature; at least an act of nature which implies an entire exclusion of all human agencies. In Gleeson v. Virginia Midland R. R. Co., 140 U. S. 435, 439, 1 Sup. Ct. 859, 35 L. Ed. 458, an accident was caused by a landslide caused by a heavy rain, and this, it was claimed, was an act of God relieving the defendant from liability. This contention was overruled by the court, Mr. Justice Lamar delivering the opinion of the court, saying:

"There was no evidence that the rain was of extraordinary character or that any extraordinary results followed it. It was a common, natural event; such as not only might have been foreseen as probable, but also must have been foreknown as certain to come. Against such an event it was the duty of the company to have guarded. Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great drouths, lightnings, earthquakes, sudden deaths, and illness have been held to be 'acts of God'; but we know of no instance in which a rain of not unusual violence, and the probable results thereof in softening the superficial earth, have been so considered."

In The Majestic, 166 U. S. 375, 386, 17 Sup. Ct. 597, 41 L. Ed. 1039, it was held that the "act of God" which would exempt one from liability is an act in which no man has any agency whatever.

In Bullock v. White Star Steamship Co., 30 Wash. 448, 70 Pac. 1106, it was held that "an act of God to relieve from the performance of a contract must be such as a person of reasonable prudence and foresight could not have guarded against."

For additional authorities on this subject see 1 Am. & Eng. Ency. Law (2d Ed.) 584, Harrison v. Hughes, 128 Fed. 860, 60 C. C. A. 442, and 1 Words & Phrases, pages 118 to 126.

[6] Does the evidence establish the fact that there was any casualty or unavoidable accident within the meaning of the proviso? Casualty has been defined as an act which proceeds from an unknown cause or is an unusual effect of a known cause. Chicago, etc., R. R. Co. v. Pullman Southern Car Co., 139 U. S. 79, 86, 11 Sup. Ct. 490, 35 L. Ed. 97. As there is no evidence to warrant a finding that any of the delays were caused by "casualty" within the meaning above described, that question need not be considered further.

[7] While some authorities hold that "unavoidable accident" is synonymous with "act of God," the better definition, in the opinion of the court, is that it must be an inevitable accident which could not have been foreseen and prevented by the exercise of that degree of diligence which reasonable men would exercise under like conditions and without any fault attributable to the party sought to be held responsible.

In Clyde v. Richmond & D. R. R. Co. (C. C.) 59 Fed. 394, it was held that "an unavoidable accident is one which occurs without any apparent cause, at least without fault attributable to any one."

In Fish v. Chapman, 2 Ga. 349, 46 Am. Dec. 393, it was held that,

"An unavoidable accident is synonymous with inevitable, and means any accident produced by physical causes which are inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness."

In Dixon v. United States, 1 Brock (U. S.) 177, Fed. Cas. No. 3,934, the court held "the words 'unavoidable accident' must be construed as any accident which renders a breach of the condition inevitable."

This question has been frequently before the courts in the construction of the 28-hour law relating to the transportation of live stock. In Newport News & Mississippi Valley Co. v. United States, 61 Fed. 488, 9 C. C. A. 579, Mr. Justice Lurton, then Circuit Judge, delivering the opinion of the court in an action arising under the act of March 3, 1873, c. 252, 17 Stat. 584, digested as section 4386 R. S. (U. S. Comp. St. 1901, p. 2995) said:

"An effect attributable to the negligence of the appellant is not an unavoidable cause. The negligence of the carrier was the cause; the unlawful confinement and unreasonable detention but an effect of that negligence."

The exception in that act was "unless prevented from so unloading by storm or other accidental cause." The trial judge in that case had charged the jury in substance:

"That if they found that the live stock had been confined in the cars of the defendant company for a longer period than 28 consecutive hours without unloading for rest, food, and water it would be no defense that such confinement had been caused by an accident to the train due to the negligence of defendant."

This charge was approved by the appellate court as a correct interpretation of the statute.

In the later 28-hour law, enacted June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), the exception reads:

"Unless prevented by storm or by other accidental or unavoidable cause, which cannot be anticipated or avoided by the exercise of due diligence and foresight."

The construction of this exception by the courts has been uniform that only some unavoidable cause which could not have been guarded against by the exercise of due diligence and foresight is within its meaning. United States v. Southern Pacific R. R. Co. (D. C.) 157 Fed. 459; United States v. A. T. & S. F. Ry. Co. (D. C.) 166 Fed. 160; United States v. Union Pacific R. R. Co., 169 Fed. 65, 94 C. C. A. 433; United States v. Atlantic Coast Line, 173 Fed. 764, 98 C. C. A. 110. Other cases not arising under the 28-hour law, but holding as was held in the case above cited, are Clyde v. Richmond & D. R. R. Co. (C. C.) 59 Fed. 394; The Olympia, 61 Fed. 120, 9 C. C. A. 393.

In United States v. A., T. & S. F. Ry. Co., it was held that, for a carrier to avail itself of a breakdown or wreck as an excuse, it must be shown that the circumstances relied on resulted from a cause which could not have been avoided by the exercise of due diligence and foresight.

In United States v. Atlantic Coast Line it was held that the failure of a conductor to examine a waybill is not a legal excuse.

In Welles v. Castles, 69 Mass. 325, it was held the term "unavoidable accident" has a much more restricted meaning, and comprehends only damage and destruction arising from supervening and uncontrollable forces or accident. Other cases to the same effect are Dreyer v. People, 188 Ill. 40, 58 N. E. 620, 59 N. E. 424, 58 L. R. A. 869; Smith v. Southern Railway Co., 129 N. C. 374, 40 S. E. 86; Tays v. Ecker, 6 Tex. Civ. App. 188, 24 S. W. 954; Crystal Springs Distillery Co. v. Cox, 49 Fed. 556, 1 C. C. A. 365.

[8] Applying these rules to the facts as established by the evidence in this case, did they justify a peremptory instruction to return a verdict for the defendant? The rule of law is well settled that it is only when all reasonable men in the exercise of a fair and impartial judgment would draw the same conclusions from the facts which condition the issue that it is the duty of the court to withdraw that question from the jury.

[9] Is a delay in starting caused by reason of the fact that another train is late an excuse within the meaning of the proviso? That was a matter which was known to the carrier or its officers in charge of the employés at the time they left the terminal, and they knew that it would cause delay in the employés getting off duty. There is nothing unforeseen in this.

But it is contended by learned counsel for defendant that the time during which the train was delayed should not be included within the time the crew was on duty. No reason is given for such a construction, and there is nothing in the act to justify it. The employé goes on duty when required by the rules of the employer to report for duty, and if for any reason he is delayed unless it is for some cause excepted by the proviso of the act the time he is on duty runs. United States v. Illinois Central R. R. Co. (D. C.) 180 Fed. 630. Any other construction would, to a great extent, defeat the object of the statute

to prevent employés of railroads from working for so many hours as to unfit them to discharge their duties intelligently and with safety to the train. It may and does happen frequently that trains are delayed in starting five or six or even eight hours. If the employés composing the crew on that train are required to remain on duty during that time and then remain on duty for 16 hours while the train is being operated, would they be in physical condition to manage that train with safety?

It is claimed that time lost by reason of side-tracking to give passenger or superior freight trains the right of way is an excuse, but it has been expressly held in United States v. Southern Pacific Railway Co. (D. C.) 157 Fed. 459, that this is no excuse if the meeting of such trains could have been anticipated at the time the train was dispatched from its starting point. Of course the roadmaster or chief train dispatcher of defendant must have known that other trains would be met, and, as shown by the evidence of the witnesses for the defendant, passenger trains and certain other freight trains were superior trains and had the right of way over those trains, and it was their duty to take the side track to enable the superior trains to pass.

There was some time lost by reason of hot boxes, and this it is claimed was an unavoidable accident. It is a matter of universal knowledge that science has not yet been able to discover the means of preventing hot boxes entirely, but a careful examination of them before starting a train and examination at stopping points will reduce accidents of that nature to a minimum. But in no event can it be said that a hot box is an unavoidable or unforeseen accident. The officials of defendant could reasonably anticipate that hot boxes are likely to occur on every train, more especially on freight trains such as these were, and it was their duty to take that fact, as well as the frequency with which other trains would be met, into consideration in establishing the division or terminal yards and determining the distances for them. If they failed to do so, and by reason of such failure the crews on its trains are required to remain on duty for a longer period than 16 consecutive hours, it is guilty of a violation of this act. United States v. A., T. & S. F. Ry. Co. (D. C.) 166 Fed. 160.

The time lost by reason of the locomotive getting out of steam or cleaning fires could by the exercise of reasonable diligence certainly have been anticipated and prevented. The coal, although testified to that it was as good as that sold to other railroads, evidently was not a good steam coal, or else the engines must not have been in proper condition. In fact, the evidence of the engineers of defendant shows that the engines used on the train were old and the coal, owing to a good deal of slack, would cake and not burn as freely as lump coal. If fires will give out as frequently as the evidence in this case shows, there must certainly be a remedy for it. What would become of the defendant's through passenger trains if this condition existed on their locomotives? All the delays shown by the evidence to have occurred could have been prevented by the exercise of reasonable diligence or at least anticipated, and the court is unable to find, after a careful reading of all the testimony, that any delays were caused by casualty,

unavoidable accident, or act of God, or by any cause which could not have been foreseen. The view most favorable to the defendant is that the cause is one which ought to have been submitted to the jury for determination.

Entertaining these views the court, with great reluctance, in view of the high regard it has always entertained for the learning and ability of the great jurist who tried this case, feels that it is its duty to sustain the motion for a new trial, as the responsibility rests upon it.