UNITED STATES v. CHICAGO, M. & ST. P. RY. CO.

(District Court, W. D. Wisconsin. April 16, 1914.)

MASTER AND SERVANT (§ 17*)—RAILROADS—HOURS OF SERVICE LAW—UN-
AVOIDABLE ACCIDENT.

Where a railroad company's violation of the Hours of Service Law (Act
March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321])
resulted from a train being required to take impure water from a creek,
due to heavy switching while the train was being run over a temporary
logging road, causing the injectors, which were in good order, to fail to
work properly, such delay was the result of an unavoidable accident
which could not have been foreseen and prevented by the use of ordinary
care, and hence the company was not liable for a penalty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16;
Dec. Dig. .§ 17.*]

At Law. Action by the United States against the Chicago, Milwau-
kee & St. Paul Railway Company. Judgment for the United States.

Otis B. Kent, Special Asst. U. S. Atty., of Washington, D. C., for the
United States.

Rodger M. Trump, of Milwaukee, Wis., for defendant.

SANBORN, District Judge. Action at law for violation of the
Hours of Service Act of March 4, 1907 (34 Stat. 415). It appears
from the agreed facts that four employés of defendant were on duty
July 8, 1912, 18¼ hours, being an excess of 2¼ hours. A plea of
guilty to a technical violation of the law was filed.

Defendant owns and operates a railroad between Star Lake and
Buswell, Wis., 22½ miles; about midway between the two places a
temporary logging road branches off from Boulder Junction to Ryan's
Spur, 14 miles. The train started from Star Lake and ran northwest
to Buswell, then retraced 11½ miles to Boulder Junction. From there
it went out on the logging spur to Ryan's Spur, where there was con-
siderable heavy switching, and then back to Boulder Junction. By this
time the engine was out of water. There is no water tank between
Star Lake and Buswell, nor would any be needed except for the extra
28-mile run to Ryan's Spur. There is, however, a creek on the main
line between Boulder Junction and Buswell, where freight trains had
been accustomed to obtain water. The engine was run from Boulder
Junction to this creek, 2½ miles, and water raised into the tank. A
pipe was lowered into the stream, and connecting the boiler steam with
the pipe near its upper end, thus creating a partial vacuum in this end,
and "aspirating" the water into the tank. The weather was warm,
and the water low in the stream, and the result was warm, impure wa-
ter in the tank, making it difficult for the injectors to work, in order
to force water into the boiler. The engine returned to Boulder Junction
and took up the train for Star Lake. The injectors worked properly
for about three miles, and the crew were able to get the train within
four miles of Star Lake, when the engine was cut off and run to the
water tank at Star Lake, the cars being necessarily left on the main

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

track. As soon as the tank was filled up with colder water the injectors again worked properly, and the train was then brought into Star Lake. By this time the men had been on duty 18¼ hours. There was no defect in the injectors; their temporary failure being caused by the high temperature and impurity of the creek water.

Of course no railway company can be excused for not providing plenty of water on its permanent lines of road. But this 14-mile logging road was only a temporary affair, which might last a month or six months, and then be taken up. The company was not required to build a water tank on this extension, or at Boulder Junction on the main line, unless this was reasonably necessary under all the surrounding conditions. The creek had been found adequate, and sufficient water was actually supplied by it, but the water proved not to be suitable for the injectors, although the train was brought nearly to a junction point before it was found necessary to cut off the engine. It looks to me as if all this complication of circumstances, being the heavy switching work, the low, warm water in the stream, the injectors working up to within four miles of a water tank and then failing, may be called so unexpected as to be regarded as unavoidable. The violation was technical only. The injectors were in good order, but the foaming of the warm, impure water caused their temporary failure. Such failure was an unavoidable accident, which could not have been foreseen and prevented by the use of ordinary care. United States v. Kansas City Southern R. Co. (D. C.) 189 Fed. 471, Id., 202 Fed. 828, 121 C. C. A. 136.

Defendant having confessed to a technical breach of the law, judgment against it for costs only should be entered.