UNITED STATES v. DELAWARE, L. & W. R. CO.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 70.

1. APPEAL AND ERROR (§ 999*)—VERDICT—REVIEW.

Where issues were fully reviewed, and the contentions of both parties carefully submitted to the jury by a charge to which no exception was taken by the government, the verdict was conclusive as to the facts on the government's writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. § 999.*]

2. MASTER AND SERVANT (§ 17*)—RAILROADS—HOURS OF SERVICE LAW—CASUALTY—QUESTION FOR JURY.

Where, in an action against an interstate carrier for violation of the Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]), it claimed immunity under section 3, on the ground that the delay was the result of unavoidable casualty, but the evidence, in relation to important elements to be considered in determining whether the casualty existed, depended entirely on testimony of the carrier's employés, the government was entitled to have the question submitted to a jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. § 17.*]

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Western District of New York.

The complaint embodies 15 causes of action against defendant for alleged violation of the act of Congress limiting hours of service on

railroad, approved March, 1907. 34 Stat. 1415. The 15 causes of action are concerned with the crews, 5 men in each, of 3 trains.

W. Palmer, Asst. U. S. Atty.

Evan Hollister, of Buffalo, N. Y., for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. There is no dispute that each of the 15 men were in fact kept on duty beyond the 16 hours specified in the act. The only provision of the act which need be referred to is that part of the third section which reads as follows:

"That the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officers or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen: Provided further, that the provisions of the act shall not apply to the crews of wrecking or relief trains."

As to the last 5 causes of action verdict was directed for the defendant. As to the other 10 causes of action, the cause was sent to the jury, which brought in a verdict for defendant. These 10 will be first considered. They involve the overtime of the crews of two trains, Nos. 1201 and 787. The facts are these:

Some time between 5 and 5:45 p. m. a train was derailed 20 miles west of Elmira and 125 miles from Buffalo at the crossing of the main line of the Delaware, Lackawanna & Western (two tracks) and the Rochester Division of the Erie (one track). Seven cars, wheat laden, were derailed, five lay across both tracks of the Delaware, Lackawanna & Western, and one across the Erie track. The wheat was spilled. There being no steam derrick at Elmira, one was borrowed from New York Central Railroad at Corning. It was slower in arriving than the Central people expected, but was at the wreck 8:50 p. m. Chief Dispatcher O'Day was in Buffalo; the two trains were in Elmira bound west. 1201 was a coal train; 787 was only an engine and caboose intended to take the place of similar parts of coal train 753, abandoned and lying on the Corning siding.

O'Day went on duty at 8 p. m. and was informed of existing conditions. At the wreck they made progress after the arrival of the derrick, and at 11:50 p. m. the trainmaster there in charge phoned to O'Day that it looked as if they would have the east-bound track open about 1 a. m., when they could begin weaving east and west the accumulated trains. O'Day then called the crew of 1201 for duty at 2:45 a. m. and the crew of 787 for 3:45 a. m. At the wreck they did get the east-bound track clear about 1 a. m. and began rebuilding the track. About 3 a. m. the derrick, which was at the time moving on this cleared east-bound track to reach a car blocking the Erie track, was itself derailed. Ordinarily it would take 20 to 25 minutes to rerail it. but the road had been so torn up and was so soft that it was not rerailed until 5:50 a. m., and it took it half an hour's more work on the east-bound track handling the car on the Erie track before the east-bound track was open for regular trains. O'Day held the two trains in

218 F.—39

Elmira till after the actual rerailment—one leaving at 5:40 a. m.; the other at 6:53 a. m.

There was abundant time for both to make the run through to destination within the 16 hours of the statute, even though there might be some further delay in weaving through east-bound trains on the single track then opened. But the chapter of accidents was not yet ended. At 8 a. m. west-bound train 1212 blew out a cylinder head when 4 miles east of the wreck. This complicated and delayed the movements of trains both ways. Train 787 was also further delayed an hour and a-half by the breaking of the knuckle of a drawhead. There was testimony that there was a flaw in the broken knuckle—four or five large sand holes where it broke—which could not be seen from the outside and could not have been discovered by inspection. There was also testimony by an inspector that he had inspected draft gearing, trucks, and couplers the afternoon before the train started. Another inspector testified to inspection of the engine of 1212, which blew out a cylinder head, the same afternoon. The testimony as to the movements of trains and the effect upon them of those several accidents was very full and detailed.

The contention of the government is that the trial judge should have held as a matter of law that defendant had not shown that the conceded overtime was within the language of the proviso of the statute. The cases cited by him do not sustain this contention. In United States v. Kansas City Southern Ry., 202 Fed. 828, 121 C. C. A. 136, the trouble was caused by leaky flues and a defective shaker rod; it did not appear when the leaking began, and there were two reports (prior to the accident) that the shaker rod was defective and should be repaired. The trial judge held that the facts brought the case within the proviso and directed a verdict for the defendant. The Court of Appeals held that this was error and that the—

"case should have been submitted to the jury, under appropriate instructions, to determine whether defendant had taken sufficient precaution to see that its engine was in proper condition when it started, and whether the delays which occurred were the result of causes which could not have been foreseen by exercise of the necessary diligence and foresight."

In United States v. Kansas City Southern Ry. (D. C.) 189 Fed. 471, a verdict had been directed in favor of defendant on the ground (inter alia) that delay was caused by a hot box. Motion for a new trial was granted; the judge—not the one who tried the cause—stating that, although science had not yet been able to discover the means of preventing hot boxes entirely, careful examination before starting and at stopping points would reduce such accidents to a minimum. The report does not show whether there was evidence as to such examinations. The case certainly is not authority for the proposition that, when there is evidence of such examination, the question whether the particular accident was or was not unavoidable should not be sent to the jury.

[1] The case at bar was submitted to the jury under a charge which construed the section, stated the issues, reviewed the testimony and the contentions of both sides, and carefully instructed the jury as to what questions they were to decide. The government took no exception to

the charge; it submitted a few requests to charge, which were all complied with. Under these circumstances the verdict is conclusive as to the facts in controversy, and no error is pointed out.

[2] The facts in reference to train 547, as to which the trial judge directed a verdict for defendant are these:

The crew was called for duty at 8:05 a. m. of the morning after the derailment above described; the blowing out of the cylinder head of No. 1212 (above referred to) induced the holding of 547 at Elmira, so as not to increase congestion at the point of blockade. It left Elmira at 10:43, having then a 5-hour running margin to get to Buffalo. There were various delays by reason of waiting for and passing other trains, and finally when it arrived at Genessee Bridge it found the bridge blocked by the breakdown of No. 787, resulting from the break in the knuckle of the drawhead above referred to. This caused a loss of an hour and a half, so that on arrival at Buffalo it was 1 hour and 35 minutes over the 16 hours of the statute.

It will be seen from this statement that elements important to be taken into consideration in determining whether or not casualty was within the terms of the proviso of section 3, supra, are the nature of the defect in the knuckle and the examination or inspections had, before the accidents, of knuckle and cylinder head. This testimony came from defendant's employés, and we think the government was entitled to have this cause of action sent to the jury under appropriate instructions.

As to the last five causes of action, judgment is reversed, and new trial ordered. As to the other ten causes of action, the judgment is affirmed.